Our next case this morning is Clark v. United States. Clark v. United States Mr. Gonstrey, you may proceed. May it please the Court. I'd like to start by going directly to some key and fundamental flaws in the trial court opinion that require reversal. The first is that it's contrary to the mandate of this Court, which specifically sent the case back to answer two questions, which courses are required and which courses were taken. Instead, the trial court decided that the courses are required only if the military decides to provide payment in the situation. That's exactly what this Court held in 2003. The statute doesn't say. Second, the entire opinion rests on a fiction that the government created this elaborate regulatory scheme to implement procedures for paying compensation that it still insists was never due. In the appeal in 2002-2003, the government's position was quite clear. They did not implement this statute, consistent with their view that the statute didn't provide for payment for correspondence purposes to the National Guard. The statute tells us that the secretary is to prescribe regulations. And the regulations say that you have to have documentary evidence and written authorization before anyone is given pay for these training courses. How do we get around that? By going directly to your earlier opinion that said what the statute says is that payment is for courses that are prescribed. It is not payment limited to when payment is prescribed. But wasn't that opinion just analyzing the 206A2 and did not address the question of whether or not the secretary could set minimum standards that also included pay statutes? The government argued all of these regulations prior to the appeal to this Court, in the appeal to this Court, and this Court reversed the judgment and sent it back to answer the two questions that I mentioned. I went and looked at those briefs, though. I don't see the government arguing that point. The government argued that prescribing means that they also have to prescribe the actual pay, but never argued the issue of minimum standards under 206B1. The government's position, I think, covered that. Notwithstanding, you can't get to the result that this Court reached, and you can't get within the mandate of the Court. The Court didn't send it back to, say, answer the two questions that we've specified and answer any other statutory questions that the government may raise. It was two questions, which courses were required and which courses were taken. The whole elaborate construct of the trial court, and let me talk about the regulations that the trial court ultimately relied on, and those are regulations that the government did rely on in the earlier appeal and in many earlier proceedings in the case. That structure creates a labyrinth for which there's no escape for payment for correspondence courses. I'm looking back at the opinion that you cite us to as supposedly authoritative enough to override those explicit regulations, but in very broad language we said the case is remanded for proceedings on the merits of the claim. And that opinion would certainly include the substance of the Secretary's regulations and whether they required written authorization for payment. Well, but in page 3 of the opinion, I believe I have the right page. But we're not at this point, as Judge O'Malley pointed out, we're at this point in that we're not considering whether the regulations require written authorization. We're trying to see if they stated a claim upon which relief could be granted, and they had alleged at least enough to get past that minimal hurdle, and that's all that we said. But they didn't allege prior written authorization, and this court held that that complaint that never alleged prior written authorization stated a claim. But we weren't deciding that. That's far beyond what the court was deciding. We were seeing if they minimally stated enough to get to the merits. Now we're at the merits. The merits seem to require written authorization. I think you need to address that. Well, I'd be happy to address that, but I don't want to finish the point without saying that I think it's quite clear from the opinion. I was on the panel.  I don't think we solved the issue of whether you need written authorization. Let me get to the merits. The government said before that there's no provision for paying correspondence courses. Now, under these regulations, they're saying, well, there are three categories. You need to be, and need prior written authorization to be in a duty status. Now, by the way, the same regulations require the commanders to issue prior written orders if these courses are going to be taken in a non-duty status. So the obligation is on the commander. If there was a failure of paperwork, it was a failure by the commanders, not failure by the members who were taking the courses. Second, they say there are three possible duty statuses. One, active duty doesn't apply. Two, full-time National Guard duty doesn't apply. Three, inactive duty training. And under the statutory definition of inactive duty training, correspondence courses are excluded. And so, therefore, the government takes the position and the trial court takes the position that there is no available payment. But under the very regulations of the government's theory, they couldn't be providing prior written authorization of the sort that they need. I mean, in my view, there was prior written authorization. If you get an order saying you have a promotion conditional on completing the following courses, those courses are required. And it's quite clear that this court's earlier opinion said there is compensation when the courses are required. But even putting aside the written authorization, can't they require that you be in a particular duty status at the time that you're taking courses? There are three duty statuses, and according to the government's theory, none of them would cover correspondence courses. So this would be an extremely peculiar way for Congress to write a statute to achieve the result that the trial court reached and that the government is advocating. Namely, no payment for correspondence courses in a statute that mandates payment for correspondence courses. But even the statute itself contemplates the possibility, for instance, where the minimum requirements for training is that you have to have 60 or 70 people in a classroom. I mean, the statute itself contemplates something that could exclude categories of training, doesn't it? Well, but that wouldn't, in certain categories, those exclusions wouldn't necessarily relate to correspondence courses where you don't need to have 60 or 70 people in a classroom. I mean, one of the great virtues of the correspondence courses is that it enables the military to provide training to more people more quickly and less expensively than requiring them all to be in residence for which they would be paid to provide the schools, the structures, the buildings, the lodging, and provide payment for the people taking the courses in residence. Correspondence courses provide a much less expensive alternative and clearly one that Congress embraced in Section 206. Did the Secretary, under regulations that he put together, provide some way of allowing you to take correspondence course? And then, of course, monitoring the amount of time you were taking them so they could somehow award proper compensation? Well, they... There's a lot of complications in that, aren't there? Well, one, the Secretary concerned is a defined term in the statute and the regulations that the trial court relied on were not issued by the Secretary concerned as defined by the statute. These were not regulations of the Secretary of the Army, the Secretary of the Air Force. These are regulations of the Chief of the National Guard Bureau. And so in terms of are these the regulations that the statute may have been referring to, the answer is, on first blush, is no. But they don't provide, and the government has said all along in this case, that they do not pay for correspondence courses taken by National Guard members. And that cannot be reconciled with the statutes. The statute did not set up a mechanism that, as this court said, mandated payment for required compensation courses and allowed, nonetheless, allowed the military to set up a regulatory system that sort of takes correspondence courses, puts them in, and gives them no way out. Because the government said there's three duty statuses, and you don't get, and two don't apply, and you don't get compensation for the third. And the government has been quite clear that it does not pay for this. So the notion that there is a regulatory system in place making the decisions, which in respect are discretionary decisions contrary to this court's decision saying that this statute is mandatory, not discretionary. Mr. Gunsford, a minute ago you pointed out that these regulations came from the National Guard Bureau. My thought on the record, you conceded that that was, the Secretary had delegated that authority to the National Guard Bureau, and that was tantamount to the Secretary's prescription of funds. I don't think so, but I will certainly check that. That was my impression as well. We'll ask Mr. Mickle about that when he arises. Let me get one other point about those regulations. They also provide, those regulations are also the place that would allow for award of retirement points for taking the correspondence courses. And the members of the Guard who took the required courses did get retirement points. When you sit down, check 275.1 in the docket, all right, to see if that's where you made the concession. 275.1. Okay. The members of the Guard did get the retirement points, so whatever it, which under the same regulations require the same prior written authorization. So, you know, whatever authorization seems to be required under these regulations in practice, the members got that with respect to retirement points. They simply didn't get it with respect to the compensation that the statute says they were mandated to receive. I want to say to your rebuttal- Yes, I do, thank you. And that's 265, not 275. 265.1. See if that's the right place. Mr. Mickle? Thank you. May it please the court. We agree with the appellant counsel in this case in that the mandate decision is probably central to this court's holding. And we believe that the prior decision by this court did not reach those merit issues and did not examine the actual training regulations that the secretary issued. Now, the trial court did not rely on all the regulations we provided. What we wanted to do was set up the fabric of the regulations running from the Secretary of Defense through the Secretary of the Army and Secretary of the Air Force to the Chief National Guard Bureau. Contrary to what plaintiff's appellant's counsel did just argue, we believe that under 10 U.S.C. Section 10503, the Chief of the National Guard Bureau actually acts for the Secretary of the Army and Secretary of Defense, or Secretary of the Air Force when promulgating those regulations. We also agree that the plaintiffs did not object to these findings, and the trial court accurately portrayed that in its decision regarding the regulations. Let me just get one thing out of the way, and that is that you spend a lot of time in your brief re-arguing the central issue that was decided by this court, putting aside the question of prescription of payment, the central issue having to do with their status. And you try to argue that there are additional facts, but I think the reply brief was pretty strong on that point, that those facts were all known at the time and that they're nothing that changes the analysis. You can't, I mean, you don't really mean to tell us that we should revisit that critical question, do you? Well, I think when we were here the first time, they were based on Mr. Clark because he was the sole plaintiff's well-pleaded complaint. And the complaint said he contended that he was not performing as a member of a reserve component. We always believed, and we still maintain, that membership, you're just like Perpich says, you wear several hats. So while you might be a member of a reserve component, you could be wearing your Title 32 state guard hat. And then when you remanded back, so we would have- But that's really just a disagreement with the prior conclusion. I mean, Judge Shaw's opinion was fairly detailed on that issue, and there's nothing new that you can do to address that. I mean, we're bound by that decision, and so are you, correct? Well, not necessarily, Your Honor, because there has been a change in the evidence. And one of the exceptions to the law of the case and the mandate rule is when there is a change in the evidence. In this case, before the court was the well-pleaded complaint- All right, show me, point me exactly to the change in the evidence because I don't see much change in evidence. Well, the evidence was, for instance, let's look at General Johnson. When General Johnson's testimony, as we pointed out in our brief, where he discussed the fact that when he simultaneously enlisted in the National Guard of the state of North Carolina, he also was a member of a reserve component, and that was 24-7. I think we quote that in our brief. But again, that's not any- just because he says it, that's not anything different than what Judge Shaw's opinion assumed. And we also pointed to the enlistment documents of Sergeant DeVern and Mr. Clark. All those evidence shows that your membership is that you're a member of a reserve component. That said, what we focused on at the trial court level upon remand was the merits of the case. Let's look at exactly- you allege that you took these courses as not as a member of a reserve component. Let's examine that. And we did that through deposition, and through the questioning that we provided and their answers, they said they were members. But regardless of that fact, even assuming that there was a distinction and that you can be a- there is a distinction between reserve component membership and guard membership, the regulations do make clear that there's many type of criteria that must be satisfied to be authorized training. And the first one is, of all, is that you have to be pre-approved. It's usually on a unit training schedule, but if it's not on a unit training schedule, it's in some type of written order. Why haven't you cited the court either in the last case or even in this case, really, to the language in 206B1 that talks about setting of minimum standards? Well, we should have probably. That would have been a clearer argument, but we did talk about the idea that the Secretary does have authority through the statute to prescribe regulations to set forth this criteria. We talked about that at the lower court when we were talking about equivalent training and just exactly what was equivalent training. But in this case, we primarily just relied on under-regulations prescribed by the Secretary. The court is absolutely correct. There was another provision in 206 that we should have probably cited to make clear that, once again, the Secretary can set minimum standards. Actually, I would argue that, really, 206 gives the Secretary tremendous discretion up to a point. The Secretary, for instance, just as Your Honor maintained, there are certain things that are non-negotiable, and that is that, you know, for certain parts of equivalent training, you know, you can only do four hours extra of equivalent training during a payment year. You have to do at least 48 hours of weekday drills before you do this. Has the Secretary set minimum standards? Oh, yes, Your Honor, he has. In fact, we pointed those out. In National Guard Regulation 350-1, he primarily stated there has to be under orders. He also defined what equivalent training was. In Air National Guard Instruction 36201, which is the Air Force regulation, same thing, pre-approved. I think it's paragraph 1-10 in Air National Guard Regulation 36201. Is the question of whether correspondence courses could ever even constitute equivalent training still an open question? Or was that decided by Judge Damage and not appealed? I'm sorry? The question of whether correspondence courses can ever constitute equivalent training. Well, I think it's still an open question. The Department of Defense doesn't think it's open, only because equivalent training is a defined term by the Department of Defense and the Secretary of the Armies and the Air Force and the National Guard Bureau. And it is that training which is essentially a make-up training. I think it's defined in 350-1, and you can see it in the appendix at JA15060, and it's paragraph 7, where it says when an individual misses the regularly scheduled period of instruction or duty due to unforeseen emergency situations of a personal nature, the training may be made up with pay according to the following guidance. I'm sorry. But here's the issue. I know this is a mess because there are so many cases, but Judge Damage seemed to say that correspondence conceivably at least could be equivalent training, and Judge Firestone doesn't really reach that issue, and yet the government didn't cross-appeal on that question. We did not cross-appeal on that question, and that's because the judgment on appeal is what we're defending. We're not defending the particular issues, and the record would support a reading of our interpretation because that is what the regulation states what equivalent training is, Your Honor. Okay. Mr. Mickle, would you address Mr. Gonsfried's primary thrust that when a commanding officer authorizes sends you a written document that says you must complete the following courses to receive your promotion, that that is authorizing written authorization under the statute to receive pay for those courses? Well, first, there's never been a document that we've seen at least introduced into evidence that says you must complete these correspondence courses. I know that the declaration of Mr. Mills, who was Sergeant Clark's commander, did not state that he ordered those courses. What that primarily is, any document that it would be, I think Sergeant Major McNamara might have testified to it in his 30B6 deposition, was kind of a counseling or mentoring statement saying if you want to be promoted, and as we demonstrated promotion in the Guard is aspirational, it's voluntary. Sergeant Major McNamara testified you could be an E-4 truck driver for 30 years, and Sergeant Major McNamara knew of that in his unit because there were some guys and men and women who just wanted to be a truck driver, and that's all they wanted to do. And they knew if they made sergeant, they wouldn't be able to drive a truck because they'd have to be a supervisor, and that's something that they didn't want to do. So there's never been a direct order that we're aware of where somebody says you must do A, B, and C. And if it did, it would still have to comport with the regulations for training because we'd want to put that individual on a status. And one of the difficulties of plaintiff's argument is if, in fact, you are in a military status during the weekend when you're not in uniform or not under subject to orders, that has implications far beyond this case. It implications revolving the FDCA. What about VA claims? I mean, what if, you know, are you entitled to compensation for injuries incurred while completing that type of non-order training? And it's not just correspondence courses. You know, you have to maintain appropriate level of physical fitness. So if you're running or working out during the week to maintain your level of physical fitness, under plaintiff's theory that arguably would be compensable as well because you are actually told by your commander you need to stay in shape. You need to meet the height weight limits. And that's in this case the orders are key because there's limited resources. The command has to dole those resources out to ensure that the unit's training mission is missed, and it can't be the individual who all of a sudden decides that I'm going to be in military status right now and I'm going to start doing some training that's compensable. And subject to your questions, we'd ask that the court affirm the trial court's judgment. We have almost three minutes remaining. The first point as to the government's arguing 206B in the first appeal was argued pages 32 and 33 of their brief the first time around. As to item 261 of the docket and looking at it, Your Honor had referenced the supplemental brief in support of the motion for summary judgment. And just looking at it quickly as I could in the courtroom, I don't see that concession. I will look at it again when I leave the courtroom today. I don't think ultimately whether there's a concession on that or not really gets to the really important point in the case, and that is that the government has consistently taken the position that it has not implemented 206. And to talk about what was the term that was just used, tremendous discretion. There's no indication. One, I think this court's earlier opinion eliminates the ability to argue that there's tremendous discretion under 206. This court said it's mandatory. Two, if there's tremendous discretion, it has to be exercised by the secretary, not something that's cobbled together as a litigation strategy by counsel in the trial court or in the court of appeals. And the notion that the secretary's concern prescribed regulations to implement 206's requirement of paying for correspondence courses is nonexistent. It doesn't appear in the regulatory world, and the arguments that are presented are not consistent with the statute. That is really the core point that indicates why this trial court decision is incorrect. With respect to written requirements of courses, I'd like to point to three pages or four pages in the joint appendix that set out in exactly the kinds of regulations that the trial court is relying on lists and descriptions saying these courses are required. And that is joint appendix page 7071, which is from ANGI 362502. Joint appendix 8200, and then the jump site within the same document of 8233, which is from AR 351-1. And joint appendix 11737, which is AR 600-100, that say these courses are required. They are correspondence courses, sometimes correspondence, sometimes in residence. And how Congress could have thought that anything more was necessary to show that these courses were, in the words of the statute, prescribed, there really shouldn't be anything more that is necessary. I think those are the best examples. There are others that are mentioned in the brief, but I think those are the clearest on the face of it. What about the question of whether correspondence courses are equivalent training? Well, the equivalent training is sort of a shorthand for the statute. Judge Damage did hold that, that they are. And in the language of the statute, the statute talks about equivalent training instruction duty or appropriate duties. And that is 206A2. Equivalent training is sort of the shorthand, and equivalent training is a term that does have some definition elsewhere. But again, if equivalent training is defined in a regulation in a way that is inconsistent with the statute, the statute controls. Thank you. Thank you, Mr. Gonsfried.